UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| MARTIN J. COBB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:13CV115 TCM |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

BRIEF IN SUPPORT OF ANSWER

Summary of Defendant's Brief

This case arises from disability applications filed by Plaintiff under Titles II and XVI of the Social Security Act (the Act). Plaintiff is 38 years old, he is a high school graduate with three years of college, and he has past relevant work as a landscaper, restaurant kitchen helper, and welder. In his applications, Plaintiff alleged disability based on limitations stemming from his bipolar disorder, back problems, and arthritic knees. An administrative law judge (ALJ) carefully considered Plaintiff's allegations of total disability but found them not credible. In assessing Plaintiff's credibility, the ALJ considered Plaintiff's self-reported daily activities; Plaintiff's treatment history, including his improvement with treatment; the objective medical evidence; and the observations and opinions of his treatment providers and other third parties. Based on her record review, the ALJ found that Plaintiff's subjective complaints of limitations were credible only to the extent that his impairments limited him to a reduced range of medium, unskilled work. The ALJ then found at step four of the sequential evaluation process that Plaintiff was not disabled because he could perform his past relevant work as a kitchen helper.

In making this finding, the ALJ relied on the job description for a kitchen helper located in the Dictionary of Occupational Tiles (DOT), as referenced by the vocational expert at the hearing.

Contrary to Plaintiff's argument, the ALJ was not required to obtain an updated medical expert opinion when evaluating whether his psychological disorder medically equaled a Listing. The record already contained the necessary medical expert opinion, i.e., a PRTF addressing Plaintiff's mental impairments, and, in the opinion of the ALJ, the subsequent evidence received from Plaintiff's mental health professionals did not demonstrate medical equivalence. Similarly, although Plaintiff argues otherwise, when formulating Plaintiff's residual functional capacity (RFC), the ALJ also properly rejected Plaintiff's testimony and the opinion of his psychiatric nurse, Carolyn Greening, that he could not work and had either a significant loss or no useful ability to perform several mental tasks. In so doing, the ALJ considered Plaintiff's extensive daily activities, including his work on the family farm and social activities, such as shopping; the contemporaneous treatment records from Ms. Greening and others, as well as the objective medical evidence reflecting that Plaintiff's mental health symptoms were not that severe; and Plaintiff's own inconsistent statements regarding his impairments and symptoms. Finally, contrary to Plaintiff's argument, the ALJ properly relied on the DOT description, as referenced by the vocational expert, in finding that he was not disabled because he could perform his past relevant work as a kitchen helper. Substantial evidence supports the ALJ's findings.

## Nature of Action and Prior Proceedings

This case stems from two disability applications made under the Act. The first is an application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401 et seq. (Tr. 133-41). The second is an application for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. (Tr. 129-32). Sections 205(g) and 1631(c)(3) of the

Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), provide for judicial review of a final decision of the Commissioner of the Social Security Administration (SSA). Plaintiff's claims were denied initially (Tr. 69-77).[1] On August 13, 2012, after a hearing at which Plaintiff was represented by his current counsel (Tr. 25-68), the ALJ determined that Plaintiff was not disabled (Tr. 9-20).

In her decision, the ALJ found that Plaintiff's physical and mental impairments limited him to lifting and carrying 50 pounds occasionally and 25 pounds frequently; sitting, standing, and walking six hours each in an eight-hour workday; and performing simple, routine, repetitive tasks with only occasional decision-making or changes in the work setting, occasional interaction with the public and coworkers, and occasional supervision (Tr. 17-18). Relying on vocational expert testimony and a corresponding job description from the DOT, the ALJ then found that Plaintiff was not disabled because he could perform his past relevant work as a kitchen helper (Tr. 19, 66). The Appeals Council denied Plaintiff's subsequent request for review (Tr. 1-8).

Statement of Facts

Plaintiff filed his applications in June 2010 (Tr. 129-41). At that time, he was 34 years old (Tr. 129, 135). Plaintiff alleged he became disabled in May 2009 based on bipolar disorder, back problems, and arthritic knees (Tr. 129, 135, 160-61, 188). He is high school graduate with some college and past relevant work as a welder, kitchen helper, and landscaper (Tr. 162, 166).

Defendant adopts the ALJ's detailed statement of facts included in her decision, with any material exceptions and additions noted in the argument section below (Tr. 12-20).

---

[1] Missouri is one of several test states participating in modifications to the disability determination procedures, which eliminate the reconsideration step in the administrative appeals process. See 20 C.F.R. §§ 404.906, 404.966, 416.1406, 416.1466. Accordingly, Plaintiff's appeal in this case proceeded directly from the initial denial to the ALJ level.

Statement of the Issues

The general issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The specific issues raised by Plaintiff in this case are (I) whether the ALJ erred in not obtaining an updated medical expert opinion on medical equivalency; (II) whether the ALJ properly evaluated Plaintiff's credibility and the opinion from Ms. Greening when formulating his RFC for a range of medium, unskilled work; and (III) whether the ALJ properly determined that Plaintiff was not disabled based on his ability to perform his past relevant work as a kitchen helper.

Standard of Review

Review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence on the record as a whole. Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support the Commissioner's conclusion. Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008). Evidence that supports and detracts from the Commissioner's decision should be considered, but an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. Finch, 547 F.3d at 935.

A court should disturb the ALJ's decision only if it falls outside the available "zone of choice"; a decision is not outside that zone of choice simply because the court may have reached a different conclusion had the court been the fact finder. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011); see McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different

outcome"). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)).

Argument

I. The ALJ Was Not Required to Obtain an Updated Medical Opinion on Equivalence.

Citing Social Security Ruling (SSR) 96-6p, Plaintiff argues the ALJ erred in failing to obtain an updated medical expert opinion on the issue of medical equivalency. Although Plaintiff acknowledges the record contains a Psychiatric Review Technique Form (PRTF) from psychologist Barbara Markway, Ph.D. (Tr. 257-67), he argues the ALJ should have obtained an updated opinion based on the treatment he received after Dr. Markway completed her opinion.

SSR 96-6p states that the requirement to receive expert opinion evidence into the record is satisfied if the ALJ obtains a completed PRTF from a medical expert. SSR 96-6p indicates, however, that an ALJ should obtain an updated medical expert opinion if "additional medical evidence is received that, in the opinion of the [ALJ], may change the [medical expert's] finding that the impairment(s) is not equivalent to any impairment in the Listing of Impairments." See SSR 96-6p, 1996 WL 374180, at *3-4 (emphasis added). Additional medical evidence was received after Dr. Markway completed the PRTF in October 2010 (Tr. 268-404). However, it is clear that, in the opinion of the ALJ, the additional medical evidence received into the record did not demonstrate that Plaintiff's mental impairments medically equaled a Listing. After carefully reviewing the record evidence, including the medical evidence received after Dr. Markway completed her PRTF, the ALJ did not believe Plaintiff's mental limitations were so severe as to preclude him from performing all gainful activity, as would be expected of an individual with a

5

medically equivalent Listing-level impairment.[2] See 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00A ("The [mental disorders] listings are so constructed that an individual with an impairment(s) that meets or is equivalent in severity to the criteria of a listing could not reasonably be expected to do any gainful activity."). Instead, the ALJ found that Plaintiff's mental impairments only limited him to the performance of simple, routine, repetitive tasks with occasional decision-making or changes in the work setting, occasional interaction with the public and coworkers, and occasional supervision; and that Plaintiff was not precluded from performing his past work as a kitchen helper (Tr. 17-19). And, for the reasons discussed below in the RFC argument, the ALJ's evaluation of Plaintiff's mental impairments is supported by substantial evidence. The ALJ did not err in failing to obtain an updated medical expert opinion.

II.  The ALJ Properly Evaluated Plaintiff's Credibility and the Opinion of Ms. Greening When Formulating Her Well-Reasoned and Detailed RFC Assessment.

Plaintiff next argues that the ALJ did not properly evaluate his credibility or the February 2011 opinion of Ms. Greening when assessing his RFC; and that the ALJ's RFC assessment is cursory and fails to include a narrative discussion describing how the evidence supports each conclusion. See Pl.'s Br. at 10-13. At the hearing, Plaintiff testified that he could not work based on his bipolar disorder, back problems, and arthritic knees. He testified that these conditions and the medications he takes for these conditions interfered with his ability to

---

[2] Plaintiff appears to argue that an updated medical expert opinion was necessary in this case simply because the evidence received after Dr. Markway completed her PRTF demonstrated he has a "severe" mental impairment under the regulations (Tr. 16-17), whereas Dr. Markway opined that his mental impairments were non-severe based on the record at the time (Tr. 257-67). But, that is not the standard for determining whether an updated medical expert opinion is needed. Instead, an updated opinion is necessary only when subsequently received evidence leads the ALJ to believe that Plaintiff's impairments may be so severe as to demonstrate medical equivalence. Although the ALJ, after reviewing the subsequent medical evidence, concluded that Plaintiff's mental impairments were severe, it is clear that the ALJ did not believe they were of medical equivalence severity. See SSR 96-6p, 1996 WL 374180, at *3-4.

6

concentrate; that he does not handle stress, routine changes or large crowds well; that he has days when he is very confused, exhausted, and irrational; that he has difficulty controlling his temper; and that he has problems standing and sitting due to his arthritis and joint pain (Tr. 40-41, 50-58, 60). In her February 2011 opinion, Ms. Greening wrote that Plaintiff has no useful ability to interact appropriately with supervisors and a substantial loss in his ability to effectively carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with coworkers, and respond appropriately to usual work situations and routine work changes (Tr. 91-93). Contrary to Plaintiff's argument, the ALJ properly evaluated his credibility and the opinion from Ms. Greening and formulated a detailed RFC supported by substantial evidence.

A claimant's RFC represents the most he can do despite the combined effect of his credible limitations. 20 C.F.R. §§ 404.1545, 416.945. The ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence, including the claimant's description of his limitations, medical records, and observations of the claimant's physicians and others. Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). In making the RFC assessment, however, the ALJ has discretion to discredit a claimant's self-reported limitations if she determines they are inconsistent with the record based on her evaluation of the factors set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), and 20 C.F.R. §§ 404.1529, 416.929. Such factors include the claimant's prior work records; observations by third parties and physicians regarding the claimant's disability; the claimant's daily activities; the duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medications; and the claimant's self-imposed restrictions. Polaski, 739 F.2d at 1322. Finally, although the RFC is a medical question, and although the ALJ must consider the medical evidence when assessing a claimant's RFC, an ALJ's RFC findings need not be tied to a specific medical

7

opinion. Rather, the ALJ has the duty to determine a claimant's RFC based on all the relevant evidence. See Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("[A]lthough medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner."); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (ALJ must determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations). In doing so, an ALJ has discretion to discredit opinions from "other" sources such as Ms. Greening that are inconsistent with other evidence in the record. See Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) (ALJ may discredit "other source" evidence based on inconsistencies in record); SSR 06-03p, 71 Fed. Reg. No. 153, 45596, SSR 06-03p (when evaluating "other source" evidence, it is appropriate for ALJ to consider nature and extent of relationship between source and individual, as well as whether source's opinion is consistent with other evidence in record).

After carefully reviewing the overall record in this case, the ALJ concluded that Plaintiff was limited to lifting and carrying 50 pounds occasionally and 25 pounds frequently; sitting, standing, and walking six hours each in an eight-hour workday; and performing simple, routine, repetitive tasks with only occasional decision-making or changes in the work setting, occasional interaction with the public and coworkers, and occasional supervision (Tr. 17-18). Contrary to Plaintiff's argument, the ALJ provided a lengthy discussion and analysis of the substantial evidence in the record that supports her RFC assessment (Tr. 12-20). In her discussion, the ALJ also provided detailed reasons for rejecting Plaintiff's testimony and Ms. Greening's opinion.

In her decision, the ALJ explained that Ms. Greening's opinion and Plaintiff's testimony of disabling impairments were inconsistent with the objective medical evidence and the contemporaneous observations and notations of his treatment providers, including most notably

Ms. Greening herself (Tr. 14-15, 19). As the ALJ noted, the treatment records revealed at most minimal symptoms with very few objective signs of significant abnormalities (Tr. 15).

For example, from June 2009 through December 2010, Plaintiff saw psychiatrist William Irvin, Jr., M.D., several times for treatment (Tr. 14, 226-27, 229, 233, 377). During these visits, Dr. Irvin consistently noted that Plaintiff's speech was regular, his thought process was logical, his affect was normal, and he had no suicidal thoughts (Tr. 226-27, 229, 233, 377). And, during visits from January 2011 through May 2012 , Ms. Greening consistently noted that Plaintiff was alert and oriented, his speech was clear and goal-oriented, his thoughts were clear and logical, and his memory, concentration, and attention were good (Tr. 14, 319-53). During these visits, Ms. Greening also repeatedly assigned Plaintiff with Global Assessment of Functioning (GAF) scores reflecting her opinion that Plaintiff had only mild symptoms: July 2011 – GAF of 69 (Tr. 340); August 2011 – GAF of 70 (Tr. 334, 336); September 2011 – GAF of 67 (Tr. 332); October 2011 – GAF of 67 (Tr. 330); November 2011 – GAF of 70 (Tr. 328); January 2012 – GAF of 70 (Tr. 326); April 2012 – GAF of 62 (Tr. 323); and May 2012 – GAF of 68 (Tr. 320). See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32, 34 (4th ed. text rev. 2000) (GAF is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations; GAF score of 61 to 70 indicates some "mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful relationships.").

Similarly, as to Plaintiff's physical limitations, the ALJ noted that the most any examiner found concerning Plaintiff's physical abnormalities were tenderness and some spasm (Tr. 18). Indeed, no examiner observed that Plaintiff had significant limitations lifting and carrying, no

examiner noted that Plaintiff had significant arm weakness or muscle atrophy or problems sitting, standing, or walking (Tr. 18). And when Plaintiff's gait and posture were noted in the treatment records, they were noted as normal (Tr. 18). For example, in August 2010, Plaintiff went to Canton LaGrange Family Practice with complaints of a dull back pain after pulling his lawn mower out of the ditch (Tr. 14, 255). On examination, Plaintiff did not appear in acute distress but he reported moderate tenderness (Tr. 14, 255). In January 2011, Plaintiff returned to Canton LaGrange Family Practice for blood work (Tr. 374). Plaintiff was noted as having normal posture and gait (Tr. 14, 375). In February 2012, Plaintiff returned with complaints of acute hip and back pain (Tr. 15, 384). On examination, however, Plaintiff's gait and posture were normal despite some tenderness along his back, and straight leg raises were negative (Tr. 365). The ALJ properly considered this evidence in determining that Plaintiff could perform medium work. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) ("The information that you, your treating or nontreating source, or other persons provide about your pain or other symptoms . . . is also an important indicator of the intensity and persistence of your symptoms."); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (ALJ should consider objective medical evidence as "useful indicator . . . in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work").

In evaluating Plaintiff's credibility and Ms. Greening's opinion, the ALJ also properly considered that Plaintiff did not always take his medication even though his symptoms improved with treatment. In December 2010, Plaintiff reported he had not taken medication for his mental symptoms in about one year (Tr. 14, 377). Yet, at the hearing, Plaintiff testified that medication helped manage his mental health symptoms (Tr. 38). Similarly, in May 2011 and July 2011, Plaintiff told Ms. Greening that his medications were effectively treating his symptoms (Tr. 340,

10

345). Likewise, as to his physical complaints, in August 2010, Plaintiff reported that he had been taking Aspirin and his pain was relieved with rest (Tr. 255). And in February 2012, Plaintiff reported acetaminophen provided fair control for his back pain (Tr. 364). See Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009) ("Finally, there is substantial evidence that Davidson's depression was controllable with medication. . . . Impairments that are controllable or amenable to treatment do not support a finding of disability."); Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005) (failure to follow treatment weighs against credibility).

In addition to the medical evidence, observations of Plaintiff's treatment providers, and improvement with treatment, the ALJ also considered Plaintiff's own statements throughout the record regarding his symptoms. Indeed, Plaintiff's own statements to his treatment providers are inconsistent with his complaints and the opinion of Ms. Greening that his mental impairments rendered him disabled. For example, in June 2009, Plaintiff told Dr. Irvin that he was hanging in there and was in a good mood (Tr. 233). In September 2009, Plaintiff told Dr. Irvin that he was doing okay and not having problems or anger (Tr. 14, 229). In his August 2010 function report, Plaintiff reported that he had no difficulty getting along with others, including authority figures (Tr. 19, 174-75). In February 2011, Plaintiff reported that he was doing okay (Tr. 15, 348). In April 2011, Plaintiff told Ms. Greening that he was not doing too bad with a stable mood (Tr. 15, 346-47). In May 2011, Plaintiff told Ms. Greening that he was "doing alright" (Tr. 344). In June 2011, Plaintiff denied having any depressive symptoms and only mild anxiety (Tr. 343). In July 2011, Plaintiff told Ms. Greening that he was not doing too bad (Tr. 15, 339). In August 2011, Plaintiff reported he was doing okay (Tr. 333). In October 2011, Plaintiff reported that he was less depressed (Tr. 15, 330). In November 2011, Plaintiff reported he was doing better (Tr. 15, 327). In January 2012, Plaintiff told Ms. Greening he was not doing too bad (Tr. 15, 325).

The record also includes statements by Plaintiff that are inconsistent with his subjective complaints of a disabling physical impairment. For example, in January 2011, Plaintiff denied having any back or muscle pain (Tr. 374). And, in July 2011, Plaintiff denied having any back pain, joint stiffness, muscle spasms, or muscle cramps (Tr. 370). See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) ("The information that you, your treating or nontreating source, or other persons provide about your pain or other symptoms . . . is also an important indicator of the intensity and persistence of your symptoms."); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) ("Subjective complaints may be discounted if the evidence as a whole is inconsistent with the claimant's testimony."); Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004) ("[A]n ALJ may disbelieve a claimant's subjective reports of pain because of inherent inconsistencies or other circumstances.").

Finally, the ALJ properly considered that Plaintiff activities of daily living were inconsistent with his subjective complaints and the opinion of Ms. Greening (Tr. 13). Instead, Plaintiff's activities of daily living provide further support for the ALJ's RFC assessment of medium, unskilled work. At the hearing, Plaintiff testified that he enjoyed hunting, watching his children play, watching television, and reading "law-type" novels (Tr. 49). He also testified that he hangs out with a friend, goes shopping, and mows the lawn (Tr. 49). He testified that he sometimes will go watch his children's sporting events (Tr. 57-58). Similarly, in an August 2010 report, Plaintiff wrote that he took care of his three children (Tr. 170). He said he did not need reminders to take his medication and could care for himself and prepare meals (Tr. 170-71). He indicated that he went outside often, could go out alone, and went shopping and paid bills (Tr. 172). He said that he went hunting and fishing every year (Tr. 173). And, in May 2011, Plaintiff said he stayed busy with his children and working on the farm (Tr. 345). Plaintiff's ability to

12

engage in many normal daily living activities provides evidence that further confirms his ability to work on a daily basis in the national economy. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000); 20 C.F.R §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).

Contrary to Plaintiff's argument, the ALJ properly evaluated the record, including Plaintiff's testimony and the opinion of Ms. Greening. Although the ALJ ultimately discredited Plaintiff's testimony and Ms. Greening's opinion of disabling limitations, the ALJ incorporated several significant limitations into the RFC. Because the ALJ's RFC findings are supported by substantial evidence, they should be affirmed. Courts should "defer heavily to the findings and conclusions of the [SSA]." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010).

III.  The ALJ Properly Determined that Plaintiff Was Not Disabled Because He Could Perform His Past Relevant Work as a Kitchen Helper.

Plaintiff's last argument is the ALJ improperly found him not disabled because he could return to his past relevant work as a kitchen helper. Plaintiff argues the ALJ erred because his RFC—namely, his limitation to occasional interaction with the public and coworkers, and occasional supervision—is inconsistent with the job of a kitchen helper. See Pl.'s Br. at 13-15.

At the hearing, a vocational expert testified that Plaintiff's past relevant work as a kitchen helper was medium, unskilled work (Tr. 66). The vocational expert provided DOT 318.687-010 ("Kitchen Helper") to describe how Plaintiff's past relevant work as a kitchen helper was generally performed in the national economy (Tr. 66). Although Plaintiff appears to suggest otherwise, DOT 318.687-010 provides that "Taking Instructions-Helping" is "Not Significant" for the kitchen helper job. See DICOT 318.687-010, 1991 WL 672755. A full review of the DOT description for this job also fails to uncover anything inconsistent with the ALJ's limitation to occasional interaction with the public and coworkers, and occasional supervision. Further, the

13

fact that Plaintiff may have performed the kitchen helper job differently is not dispositive. "Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled." See Lowe v. Apfel, 226 F.3d 969, 973 (8th Cir. 2000).

Finally, Plaintiff argues the ALJ nevertheless erred because she did not make detailed findings of fact regarding the demands of the kitchen helper job. But the Eighth Circuit and this Court have found that the ALJ is not required to make these findings if she relies on a job description from the DOT. See Pfitzner v. Apfel, 169 F.3d 566, 569 (8th Cir. 1999) ("The ALJ must also make explicit findings regarding the actual physical and mental demands of the claimant's past work. The ALJ may discharge this duty by referring to the specific job descriptions in the [DOT] that are associated with the claimant's past work." (internal quotations and citations omitted)); Brinegar v. Barnhart, 359 F. Supp.2d 847, 858 (E.D. Mo. 2005) ("In investigating the demands of plaintiff's past work, the ALJ is not required to limit his analysis to plaintiff's narrative description, but can evaluate it as it is done in the national economy. Having relied on DOT listing 902.683-010 for the requirements of a dump truck driver as performed in the national economy, the ALJ was not required to reconcile plaintiff's description of his position with the DOT description, nor compare plaintiff's RFC with his own description. In this regard, the ALJ committed no error." (internal parenthetical citations omitted)).

## Conclusion

Plaintiff had a fair hearing and full administrative consideration in accordance with applicable statutes and regulations. Substantial evidence on the record as a whole supports the Commissioner's decision. Accordingly, the Commissioner's decision should be affirmed.

Respectfully submitted,

RICHARD G. CALLAHAN
UNITED STATES ATTORNEY


  s/ *Jane Rund*
JANE RUND #47298MO
Assistant United States Attorney
111 South 10th Street, Suite 20.333
St. Louis, Missouri 63102
(314) 539-2200
(314) 539-2287 FAX
Email: jane.rund@usdoj.gov

OF COUNSEL
Rhonda Wheeler
Acting Chief Counsel, Region VII
Social Security Administration

By
ROBERT M. SMITH #49726 MO
Assistant Regional Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2014, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following: Julie Schuetz, Attorney for Plaintiff, P.O. Box 331, Quincy, Illinois 62306.

    s/ Jane Rund
    JANE RUND #47298MO
    Assistant United States Attorney